**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 13-cv-1455-WJM

TOMMY JOHNSON,

     Plaintiff,

v.

CAROLYN W. COLVIN, acting Commissioner of the Social Security Administration

     Defendant.

---

**ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS**

---

This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Tommy Lorenzo Johnson ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for supplemental security income benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

For the reasons set forth below, the ALJ's decision denying Plaintiff's application for supplemental social security income benefits is affirmed.

**I.  BACKGROUND**

Plaintiff was born on May 21, 1979 and was 20 years old on the alleged disability onset date. (Admin. Record ("R.") (ECF No. 10) at 21, 46.) Plaintiff has a GED and prior work experience as a line cook, waiter, cafeteria attendant (bus boy), and convenience store cashier. (R. 33.)

Plaintiff filed an application for supplemental security income on October 27, 2008, after having previously been denied benefits in 2006.  (R. 19, 265.)  The application was denied on April 30, 2009 and, upon a request for a hearing, his claims were heard on July 20, 2010.  (R. 18, 160, 163, 184.)  The ALJ found that Plaintiff was not disabled and denied his claim on September 1, 2010.  (R. 136.)  The Appeals Council remanded the case to the ALJ for re-hearing.  (R. 153.)  The ALJ held a second hearing on February 13, 2012, which was continued to allow Plaintiff time to find representation.  (R. 85-87.)  A third hearing was held on May 2, 2012.  (R. 91.)  Plaintiff and vocational expert Martin Rauer testified at the second hearing.  (R. 92.)

On June 25, 2012, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1]  (R. 18-35.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 17, 1999, the alleged onset date.  (R. 21.)  At step two, he found that Plaintiff suffered from the severe impairments of "status post remote gunshot wound resulting in left arm, hand, and wrist disorder, alcohol dependence, posttraumatic stress disorder (PTSD), and affective disorder (20 CFR 404.1520(c) and 416.920(c))."  (R. 22.)  The ALJ did not find Plaintiff's attention deficient hyperactivity disorder ("ADHD") or back pain to be medically determinable impairments.  (*Id.*)  At step three, the ALJ found that Plaintiff's

---

[1]  The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

impairments, while severe, did not meet or medically equal any of the impairments

listed in the social security regulations.  (*Id.*)

With respect to the Plaintiff's residual functional capacity ("RFC"), the ALJ found:

> After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform all
> work with the following limitations: the claimant can lift and
> carry 20 pounds occasionally, 10 pounds frequently.  He is
> able to stand and/or walk a total of 6 hours in an 8 hour
> workday and sit a total of 6 hours in an 8 hour workday.  He
> should never be required to use his left upper extremity for
> pushing and/or pulling, should never be required to crawl or
> climb ladders, ropes, or scaffolds.  The claimant should
> never be required to use his left hand for fine picking,
> pinching, or fingering, or to reach above chest level.  He is
> able to occasionally use his left upper extremity to handle.
> The claimant cannot engage in work requiring hyper-
> vigilance.  The claimant is able to have the following
> interaction with co-workers: frequent.  The claimant is able to
> have contact and/or interaction with the public as follows:
> frequent.

(R. 25.)

Given the limitations in the RFC, at step four the ALJ found that Plaintiff could not

perform past relevant work.  (R. 33.)  At step five, the ALJ found that there were significant

numbers of jobs in the national economy that Plaintiff could perform.  (R. 34.)

Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of

the Act and, thus, not entitled to benefits.  (R. 35.)  The Appeals Council denied

Plaintiff's request for review.  (R. 1.)  Thus, the ALJ's June 25, 2012 decision is the final

administrative decision for purposes of review.

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial

evidence in the record as a whole supports the factual findings and whether the correct

3

legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  *Id*.  "It requires more than a scintilla, but less than a

preponderance."  *Lax*, 489 F.3d at1084.  Evidence is not substantial if it is overwhelmed

by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir.

2005).  In reviewing the Commissioner's decision, the Court may neither reweigh the

evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468

F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if the ALJ failed to apply the correct

legal test, there is a ground for reversal apart from a lack of substantial evidence."

*Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  ANALYSIS

On appeal, Plaintiff raises five issues: (1) The ALJ erred by failing to obtain

additional medical evidence on remand from the Appeals Council; (2) the ALJ failed to

make adequate factual findings regarding Plaintiff's mental condition; (3) the ALJ's RFC

was contrary to the weight of evidence in the record; (4) the ALJ erred in finding that

Plaintiff could perform jobs that exceeded his RFC; and (5) the ALJ erred in finding that

there were sufficient number of jobs in the local economy that Plaintiff could perform.

(ECF No. 13.)  The Court will address each of these issues in turn below.

## A.    ALJ's Record Development Upon Remand

The ALJ's decision at issue here—which is dated June 25, 2012—was entered

after the Appeals Council remanded the ALJ's September 1, 2010 order denying

benefits.  (R. 155.)  In his order remanding the case, the Administrative Appeals Judge

("AAJ") directed the ALJ to, amongst other things:

> Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913).  The additional evidence may include, if warranted and available, a consultative examination and medical source statements about what the claimant can still do despite the impairments.

(*Id.*)  After the AAJ's remand, the ALJ did not obtain any additional consultative examinations or seek any additional medical source statements.  The ALJ instead noted that the Plaintiff did not have any medical treatment between August 2008 and March 2012.  (R. 27.)

Plaintiff contends that the AAJ had ordered the ALJ to obtain additional evidence upon remand, and that the ALJ's failure to do so is reversible error.  (ECF No. 13 at 16-17.)  The Court disagrees with Plaintiff's interpretation of the AAJ's instructions. Instead of requiring the ALJ to obtain additional consultative examinations or medical evidence, the AAJ permitted the ALJ to do so, if he found that additional evidence was "warranted and available" in order to "complete the administrative record".  (R. 155.) Prior to the AAJ's remand, the record contained consultative examinations of both Plaintiff's physical health and his mental health, so no additional consultative examinations were necessary to complete the record.  (R. 496-500 & 501-06.) Furthermore, Plaintiff did not have any additional medical treatment between the ALJ's first and second decisions, so there was no additional medical evidence to obtain from treating sources.  (R. 112.)

On these facts, the Court finds that the ALJ's failure to obtain additional medical

evidence or consultative examinations after remand from the Appeals Council was not error.

**B.      ALJ's Findings Regarding Plaintiff's Mental Impairments**

With regard to mental impairments, at Step 2, the ALJ found that Plaintiff's PTSD and affective disorder were "severe" but that Plaintiff's ADHD was not medically determinable.  (R. 22.)  The ALJ noted that the evidence of PTSD and affective disorder was "questionable at best" as "neither of these impairments was diagnosed by a treating source".  (*Id.*)  The ALJ further noted that Plaintiff's "impairments of PTSD and affective disorder are only marginally 'severe' when considered alone or individually", and that "[c]onsequently, some of the impairments stated above will not require or result in a correlative functional limitation in the claimant's residual functional capacity."  (*Id.*)

Plaintiff contends that the ALJ's statements regarding Plaintiff's mental impairments are "so unclear that it is impossible to ascertain exactly how the ALJ came to his conclusions" such that the matter must be remanded for additional findings. (ECF No. 13 at 18-19.)  The Court disagrees.  Despite the lack of medical evidence from a treating source, the ALJ gave Plaintiff the benefit of the doubt and found that Plaintiff's PTSD and affective disorder were severe.  (R. 22.)  The ALJ then considered these impairments when determining whether Plaintiff's impairments met or medically equaled the Social Security Listings.  (R. 23.)  The ALJ also considered Plaintiff's PTSD and affective disorder when fashioning the RFC, including weighing both Plaintiff's own testimony of his symptoms, and the results of Dr. Kutz's consultative examination.  (R. 30-32.)

The Court finds that the ALJ clearly explained his reasoning and appropriately considered Plaintiff's mental impairments at each required step in the process.  Thus, Plaintiff has failed to show any error in this regard.

**C.    RFC**

The ALJ found that Plaintiff had the RFC to perform all work with the limitations that he could only lift and carry 20 pounds occasionally and 10 pounds frequently, could stand, walk or sit for 6 hours of an 8 hour workday, should never be required to use his left upper extremity for pushing or pulling, should never be required to crawl or climb ladders, ropes, or scaffolds, should never be required to use his left hand for fine picking, pinching or fingering, or to reach above chest level, though he could occasionally be required to use his left upper extremity to handle, and should not engage in work requiring hyper-vigilance, though he could have frequent contact with co-workers and the public.  (R. 25.)

Plaintiff contends that this RFC is not supported by substantial evidence in the record, and that this constitutes reversible error.  (ECF No. 13 at 19.)  Specifically, Plaintiff argues that there was no medical evidence to support the ALJ's finding that Plaintiff could occasionally use his upper left extremity for handling.  (*Id.* at 20.)  Plaintiff points out that the ALJ "accepted [examining physician] Dr. Carson's manipulative push/pull limitations" and stated that Dr. Carson's "medical opinion is not contradicted by any other medical opinion in the record."  (R. 32.)  Despite these statements, the ALJ did not adopt Dr. Carson's opinion that Plaintiff had "no use of his left hand for handling or grasping" and that his left hand "was fixed in a fist position".  (R. 497.)

The Court does not agree that this apparent contradiction is reversible error.

7

First, the ALJ explained why he was not deferring to Dr. Carson's opinion about Plaintiff's ability to use his left extremity, noting that Plaintiff "has taken part in activities that suggest that he may have greater use of his left arm than is described in Dr. Carson's assessment." (R. 32.)  There is substantial evidence in the record to support this statement, particularly Plaintiff's work history after he was injured, his testimony regarding his ability to self-care and care for his grandmother, and the investigation by the Cooperative Disability Investigations Unit. (R. 28, 30, 511-13.)  Additionally, the ALJ noted that Dr. Carson's opinions were based on a one-time examination of Plaintiff, and relied heavily on his self-reported ability to use his extremity. (R. 29-30, 33.)  The ALJ pointed to evidence obtained by the Colorado Cooperative Disability Investigator which showed that Plaintiff was "not completely forthright in his reports to Dr. Carson". (*Id*.)

Plaintiff also argues that the ALJ erred in finding that Plaintiff could occasionally use his left extremity to handle because there was no medical opinion in the record to support this finding. (ECF No. 13 at 16.)  However, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).  Rather, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (following 20 C.F.R. § 416.927(e)(2) and Social Security Regulatin ("SSR") 96-59, 1996 WL 374183, at *5); *see also* 20 C.F.R. §§ 404.1546(c) and 416.946(c). The Tenth Circuit has "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level

8

before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 949.

Despite the lack of medical opinion supporting the ALJ's finding that Plaintiff could occasionally handle items with his upper left extremity, the Court finds that there is substantial evidence in the record to support this finding.  After his injury, Plaintiff worked as a prep cook, waiter, bus boy, and convenience store cashier, all of which require some use of both upper extremities.  (R. 33.)  Additionally, Plaintiff was observed using his left extremity by investigators with the Cooperative Disability Investigations Unit, and also during Dr. Carson's examination.  (R. 497, 509-11.)  The Court finds that this is substantial evidence which supports the ALJ's finding that Plaintiff could occasionally use his upper left extremity to handle.

Finally, Plaintiff argues that the ALJ's RFC assessment is error because he repeatedly referred to Dr. Carson when discussing Plaintiff's mental limitations, even though Dr. Carson offered no opinion on Plaintiff's mental status.  (ECF No. 13 at 20.)  Plaintiff contends that this error makes it impossible to understand the ALJ's reasoning and, therefore, remand is required.  (*Id*.)  The Court agrees that the ALJ appears to mistakenly refer to Dr. Carson while discussing Dr. Kutz's medical opinions.  (R. 32-33.)  However, this scrivener's error does not warrant reversal.  *Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (a "mere scrivener's error" that does not affect the outcome of the case does not merit reversal).  The ALJ accurately described Dr. Kutz's medical opinions, and he considered these opinions as he is required to consider any medical source.  (R. 32-33.)  Under these circumstances, the fact that the ALJ used the wrong name to refer to Dr. Kutz does not require remand.

Accordingly, the Court finds that Plaintiff has failed to show any error in the ALJ's

RFC.

**D.    Findings Regarding Plaintiff's Ability to Work**

The ALJ found that Plaintiff could work as a call-out operator, a dealer account investigator, escort vehicle driver, and a hand painter and stainer.  (R. 34.)  With respect to the hand painter/stainer position, the ALJ noted that Plaintiff could only perform 50% of those positions available in the national economy based on the limitations with regard to his left upper extremity.  (*Id*.)

Plaintiff argues that the ALJ's analysis regarding the positions that Plaintiff could perform was deficient because the physical capabilities necessary for these positions in the Dictionary of Occupational Titles ("DOT") conflicts with Plaintiff's RFC.  (ECF No. 13 at 22.)   Plaintiff contends that, given this conflict, the ALJ failed to make the appropriate findings, and failed to fully develop the record.  (*Id*.)

There is well-established case law regarding how an ALJ is required to deal with a conflict between a vocational expert's testimony and job descriptions in the DOT.  *See* SSR 00-4p, 2000 WL 1898704, at *2; *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999).  However, application of this line of cases depends on an actual conflict.  The issue in this case is that Plaintiff is largely restricted from using his left upper extremity. However, neither the DOT nor the Selected Characteristics of Occupations ("SCO") differentiates between work that requires two upper extremities, and that which can be performed primarily with one extremity.  (ECF No. 14 at 22.)  Thus, Plaintiff has failed to point to any conflict between the vocational expert's testimony and the DOT/SCO which the ALJ was required to resolve.

The vocational expert testified that, in identifying jobs that Plaintiff could perform given his RFC, the expert was "[l]ooking at those positions that classically can be performed with a great majority of the work done by one upper extremity".  (R. 128.) Thus, even though neither the DOT nor the SCO delineate jobs in this manner, the vocational expert considered the Plaintiff's particular situation.  The ALJ was permitted to rely on the vocational expert's experience and training in this regard.  *See Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007) (where DOT/SCO are not specific with regard to certain limitations, the ALJ is permitted to rely on the vocational expert's testimony); *see also Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) ("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. . . .  [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation.").

**E.    Number of Jobs in the Economy**

Based on the vocational expert's testimony, the ALJ found that there were 157,000 jobs in the national economy that Plaintiff could perform and that, because this is a "significant number" of jobs, Plaintiff was not disabled.  (R. 34.)  The ALJ made no findings as to the number of jobs that Plaintiff could perform in the local economy.  (*Id.*)

Plaintiff first argues that the ALJ's calculation of the number of jobs is incorrect.  (ECF No. 13 at 22.)  Defendant agrees that the ALJ appears to have erred when he found that there were 116,000 call-out operator jobs in the national economy, because

11

the vocational expert's testimony was that there were 11,600 of these positions in the national economy.  (Compare R. 34 with R. 128.)   However, Defendant argues that this is a scrivener's error that does not affect the outcome of the case.  The Court agrees.

The Tenth Circuit has refused to establish a bright line rule regarding the specific number of jobs necessary to meet the standard requiring that a "significant number" of jobs exist that the Plaintiff can perform.  *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).  The Court cannot say that the ALJ's finding of that 52,600 jobs was a "significant number" was error, as the Tenth Circuit has affirmed cases in which far fewer jobs existed.  *See, e.g., Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (11,000 jobs in national economy is significant number); *see also Deanda v. Colvin*, 2014 WL 971696, *10 (D. Utah March 12, 2014) (33,000 jobs is significant).

Plaintiff also argues that the ALJ's failure to consider the number of positions that exist in the local economy is reversible error.  (ECF No. 13 at 22.)  "The problem is that the controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy." *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).  Whether work exists in the immediate area in which a claimant lives is irrelevant.  *See* 42 U.S.C. § 423(d)(2)(A) (providing that "'work which exists in the national economy' means work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country," and that it is irrelevant "whether such work exists in the immediate area in which [the claimant] lives"); 20 C.F.R. § 404.1566(a) ("It does not matter whether . . . [w]ork exists in the immediate area in which [the claimant] live[s]."); *Harmon v. Apfel*,

12

168 F.3d 289, 292 (6th Cir. 1999) ("The Commissioner is not required to show that job opportunities exist within the local area.").  Thus, Plaintiff has failed to show that the ALJ's failure to make specific findings regarding the availability of jobs in the local economy is error.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's denial of benefits is AFFIRMED.

Dated this 1st day of August, 2014.

BY THE COURT:

_____
William J. Martinez
United States District Judge

13